FILED
2026 Apr-21  PM 02:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| CRYSTAL L. THEDFORD, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.:  2:25-cv-00401-RDP** |
| | } | |
| CAREER PATH TRAINING CORP., | } | |
| d/b/a ROAD MASTER DRIVING | } | |
| SCHOOL OF BIRMINGHAM, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Career Path Training Corp.'s Motion to Dismiss Plaintiff's Third Amended Complaint. (Doc. # 26). For the reasons explained below, Defendant's Motion is due to be granted.

## I.    Background

Plaintiff Crystal Thedford ("Plaintiff") is a 44-year-old Black female formerly employed by Defendant Career Path Training Corp. ("Defendant") as a CDL License Instructor from December 2023 to August 2024. (Doc. # 25 ¶¶ 8-9, 21). Plaintiff claims that she met or exceeded all performance expectations during her employment. (*Id.* ¶ 10). From the beginning of her employment until July 26, 2024, Plaintiff's immediate supervisor was James McNutt ("McNutt"), who is a white male. (*Id.* ¶ 11).

Plaintiff claims that shortly after her employment with Defendant began, she experienced "unprofessional behavior and harassment" from another employee, Douglas Pettyjohn-McGuigan ("Pettyjohn"). (*Id.* ¶ 13). "Plaintiff reported [Pettyjohn] would curse her, belittle her and threaten her in front of students." (*Id.*). Plaintiff claims other White males who worked with Plaintiff,

Mathew Hall, Jason Croy, "Joe," and Kenneth Core, "were not cursed, belittle[d] or threatened." (*Id.*). Plaintiff states that she first reported Pettyjohn's behavior on January 3, 2024. Plaintiff reported to McNutt that Pettyjohn's "behavior was constant when McNutt was off campus and totally affected her working environment," which led to a discussion between McNutt, Plaintiff, and Pettyjohn. (*Id.* ¶¶ 13-15.) After the discussion, Plaintiff states that conditions temporarily improved. (*Id.* ¶ 15).

However, Plaintiff claims that the "harassment" resumed about a month later. (*Id.*). According to Plaintiff, Pettyjohn "downplay[ed] Plaintiff's training with Plaintiff's students" and accused Plaintiff of "not clocking out for lunch," "not returning travel funds from a trip," "not submitting several evaluations that had already been submitted," and "giving out company information . . . to students." (*Id.* ¶¶ 16-18). Plaintiff alleges that she again complained to McNutt "that the behavior was sexist and racist," but no action was taken. (*Id.*).

After making these complaints, Plaintiff claims that she had to seek medical attention on or about June 13, 2024 due to a panic attack (which she alleges was caused by Pettyjohn's "harassment"). (*Id.* ¶ 19). Yet another meeting was held between McNutt, Plaintiff, and Pettyjohn, but Plaintiff alleges that the "harassment" continued, with Pettyjohn "continu[ing] to threaten, curse, and belittle Plaintiff in front of her students" for a period of two months. (*Id.*).

On July 26, 2024, Pettyjohn was promoted to the role of "Supervisor and [A]ssociate [S]chool [M]anager," which made him Plaintiff's direct supervisor. (*Id.* ¶ 12). Plaintiff claims that she "originally applied for [the] position" and that McNutt recommended her for it. (*Id.*). According to Plaintiff, she met with Manager Jeff Dennison, and he stated, "I can't believe you all want a black female in that position." (*Id.*).

On or around August 30, 2024, Plaintiff claims that she was called to a meeting with Pettyjohn, another Black female coworker, a representative from the Human Relations Department, and Dennison. (*Id.* ¶ 21). At the meeting, Plaintiff was informed that she was being terminated for an alleged incident on August 21, 2024 where Plaintiff "threatened two students and held them in the cab of a tractor against their will." (*Id.*). Plaintiff disputed the allegations and claims that this reasoning was pretext for her termination. (*Id.*). She alleges the actual reason for her discharge was that it was in retaliation for her complaints about Pettyjohn's behavior.

Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") on December 13, 2024. (Doc. # 4 at 3-4). On December 17, 2024, the EEOC issued a "Determination and Notice of Rights" letter to Plaintiff, which informed her that the EEOC would not be proceeding further with her charge, but she had a right to sue Defendant within ninety days of the receipt of the Notice. (*Id.* at 1-2).

Plaintiff brought this action on March 17, 2025, originally proceeding *pro se*. (Doc. # 1). On March 20, 2025, Judge England entered an order requiring Plaintiff to file an amended complaint within twenty-one (21) days. (Doc. # 5). On April 11, 2025, Judge England informed Plaintiff that the deadline had passed and issued a new deadline of April 18, 2025. (Doc. # 6). On April 18, 2025, Attorney Roderick Walls entered a notice of appearance and filed Plaintiff's First Amended Complaint. (Docs. # 7, 8). The case was reassigned to this court on August 12, 2025 in light of the parties' failure to consent to the Magistrate Judge. (Doc. # 19).

On September 25, 2025, this court entered an order striking Plaintiff's First Amended Complaint as an impermissible shotgun pleading. (Doc. # 20). The court identified two primary deficiencies. First, the complaint was replete with conclusory and vague allegations that were unsupported by sufficient facts. (*Id.* at 2). Second, the complaint failed to separate each

3

independent cause of action into its own distinct count. Most notably, it improperly nested independent claims for race discrimination under Title VII and 42 U.S.C. § 1981 as sub-counts within a retaliation claim, and it also embedded what appeared to be a hostile work environment claim within other counts rather than asserting it as a standalone cause of action. (*Id.* at 3). Thus, Plaintiff was required to file a Second Amended Complaint. (*Id.* at 4).

Plaintiff filed a Second Amended Complaint on November 4, 2025 (Doc. # 23), but the court struck it for the same reasons it struck the First Amended Complaint (Doc. # 24). Plaintiff's race discrimination claims were again pleaded as sub-counts to her retaliation claim rather than as separate, independent counts, and the complaint once again referenced harassment without asserting a hostile work environment claim as a standalone cause of action. (*Id.* at 1-2). Given the persistence of these deficiencies, the court ordered Plaintiff to file a Third Amended Complaint and cautioned Plaintiff that further noncompliance "with the Federal Rules of Civil Procedure and the orders of this court again MAY result in dismissal of this action." (*Id.* at 2). Plaintiff filed her Third Amended Complaint on November 19, 2026. (Doc. # 25).

Plaintiff's Third Amended Complaint has asserted four causes of action against Defendant: (1) Title VII Sex Discrimination, (2) Title VII Retaliation, (A) Title VII Race Discrimination, and (B) Race Discrimination under 42 U.S.C. § 1981. (*Id.*).

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards,

nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### III.    Analysis

Shotgun pleadings violate Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), if they "fail[] to one degree or another . . . to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

There are four basic categories of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland*, 792 F.3d at 1321-23. "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The key question in determining whether a pleading is deemed "shotgun" is not whether a complaint fits into an identified category, but rather whether it includes enough information to allow a defendant and the court to "readily determine" if it states a plausible claim for relief. *See id.* at 1326.

As an initial matter, Plaintiff's Third Amended Complaint repeatedly "re-alleges and incorporates" large swaths of prior paragraphs into each count without meaningful narrowing. (*See generally* Doc. # 25). For example, Count I begins with paragraph 23 and incorporates paragraphs 1-22, Count II begins with paragraph 39 and incorporates paragraphs 1-38 (including Count I), and "sub-count" B incorporates 1-56 (including all preceding counts). (*Id.*). This wholesale

incorporation makes it difficult to discern which factual allegations are intended to support each legal theory and risks each count being supported by the entire complaint regardless of relevance. *See Weiland*, 792 F.3d at 1321-23.

Plaintiff's Third Amended Complaint also amounts to the second type of shotgun pleading because it contains "conclusory" and "vague" facts that continue to present a "moving target of general allegations." *Id*. at 1324; *United States ex rel. Musachia v. Pernix Therapeutics, LLC*, 2021 WL 2826429, at *4-5 (N.D. Ala. July 7, 2021).[1] For example, Count I states that Plaintiff "worked with several white males and one black female" and that "[M]atthew[,] Jason, Joe and Kenneth were all white males in the same capacity as Plaintiff and was treated differently." (Doc. # 25 ¶¶ 26-27). However, Plaintiff does not specify what positions these individuals held, whether they were subject to the same supervisors as Plaintiff, or any other facts sufficient to establish that they were similarly situated to Plaintiff. Earlier in the complaint, Plaintiff claims she "reported [Pettyjohn] would curse her, belittle her and threaten her in front of students." (*Id.* ¶ 13). This allegation is also conclusory and vague because it fails to provide any specific factual context regarding when these alleged incidents occurred, how frequently they happened, or the substance of the comments or threats.

Similar deficiencies appear in the remaining counts. In Count II, Plaintiff again claims that "the Defendant's behavior was discriminatory shortly after she started her employment." (Doc. # 25 ¶ 37). However, this allegation is conclusory and threadbare because it fails to identify any specific actions, statements, or events that allegedly constitute discrimination, or to explain how such conduct manifested during the relevant time period. Likewise, Plaintiff's repeated assertions that "[t]he unlawful intentional actions of the Defendant . . . were undertaken with malice and in

---

[1] Although these are non-exhaustive examples, they are emblematic of the Third Amended Complaint's continued lack of factual support for its allegations.

reckless disregard of the federally protected rights of the Plaintiff" (Doc. # 25 ¶¶ 33, 43, 55) are purely formulaic recitations of legal conclusions. These allegations are unsupported by any underlying factual detail and merely restate elements of liability without providing the necessary factual enhancement required to state a plausible claim. Accordingly, they are insufficient to move Plaintiff's claims beyond a speculative level.

Plaintiff's Third Amended Complaint is also a shotgun pleading of the third type. The Third Amended Complaint includes two counts: (1) Title VII Sex Discrimination and (2) Title VII Retaliation. (Doc. # 25 at 6, 8). However, once again, under Count II, there are two sub-counts: (A) Race Discrimination Pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and (B) Race Discrimination Pursuant to 42 U.S.C. § 1981 via § 1983. (Doc. # 25 at 10, 12).

First, sub-counts A and B are independent causes of action that are separate from Plaintiff's Title VII Retaliation claim. Despite this court's explicit instruction that these claims "should be separated into individual counts and not presented as sub-counts," (Doc. # 20 at 3), Plaintiff has again nested them beneath Count II. Additionally, Plaintiff again claims "harassment" throughout her stated causes of action but does not bring a separate claim for harassment (also known as "hostile work environment"), leaving both the court and Defendant to guess whether that claim is actually being brought. (*See* Doc. # 25 ¶¶ 13, 15-16, 19-20, 29, 34, 40, 48-49). This court has now twice put Plaintiff on notice that a hostile work environment claim cannot be embedded within other counts and must be pled as a standalone cause of action.

Plaintiff also appears to blur an additional and distinct theory of liability into her race discrimination sub-counts: a failure-to-promote claim. Plaintiff alleges that she applied for and was qualified for a supervisory position, but that Defendant selected Pettyjohn, a white male

employee, instead. (Doc. # 25 ¶¶ 12, 53-54, 59-61). Plaintiff incorporates these allegations into her broader discrimination theories without clearly asserting a standalone failure-to-promote claim or separating it into its own count. (*Id.*). Neither the court nor Defendant can be reasonably expected to determine that such a claim is being asserted when it is not clearly labeled and pled as a separate count.

The Eleventh Circuit has shown "little tolerance for shotgun pleadings." *Shabanets*, 878 F.3d at 1295. "A district court has the 'inherent authority to control its docket and ensure the prompt resolutions of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Id.*; *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). But, the pleading party should have at least once chance to remedy such deficiencies before a court dismisses with prejudice an action on shotgun pleading grounds. *Shabanets*, 878 F.3d at 1295; *Jackson*, 898 F.3d at 1358.

Here, Plaintiff has had more than one chance. This court struck Plaintiff's First Amended Complaint and provided explicit, detailed instructions for curing its shotgun pleading deficiencies. (Doc. # 20). Plaintiff then filed a Second Amended Complaint that repeated the same errors. (Doc. # 24). The court again struck that pleading and identified the specific deficiencies requiring correction. Despite now having been given three opportunities to file a complaint that complies with the Federal Rules of Civil Procedure and the orders of this court – and having been expressly warned that further noncompliance could result in dismissal – Plaintiff's Third Amended Complaint continues to suffer from the same deficiencies that have plagued each of its predecessors. Plaintiff has demonstrated either an unwillingness or an inability to remedy these pleading defects, and the interests of judicial economy and fairness to Defendant warrant no further leave to amend. Accordingly, this action is due to be dismissed with prejudice.

## IV.    Conclusion

For the reasons explained above, Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint is **GRANTED**. Plaintiff's Third Amended Complaint is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this April 21, 2026.

**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE